2013 ND 58

**Loren R. WOODWARD, Plaintiff and Appellant**

v.

**Rita WOODWARD, Defendant and Appellee.**

No. 20120315.

Supreme Court of North Dakota.

April 8, 2013.

Daniel J. Nagle, Mandan, ND, for plaintiff and appellant.

Theresa L. Kellington, Bismarck, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Loren Woodward appealed from a divorce judgment ordering him to pay spousal support in the amount of $1,000.00 per month to Rita Woodward. We affirm.

I.

[¶ 2] Loren and Rita Woodward were married in December of 1991. They had no children together. Loren Woodward is a Navy veteran, and began working for BNSF Railroad in 2001. He currently makes more than $78,000.00 per year. Rita Woodward has college degrees in Music and English Literature, with a minor in German. She has never used her degrees professionally. In the past, she has worked as a Certified Nurse's Assistant and at Walmart. She currently works at Wagner Chiropractic, and makes around $27,000.00 per year. The couple moved fairly frequently to advance Loren Woodward's career with BNSF. Both parties had extramarital affairs near the end of the marriage, and Loren Woodward admitted to drinking excessive amounts of alcohol during the marriage. Rita Woodward had breast cancer, but it is in remission.

[¶ 3] Loren Woodward filed for divorce in 2011. A trial was held on the issues of property division and spousal support. The district court awarded Rita Woodward a net distribution of $66,592.78, and awarded Loren Woodward a net distribution of $42,465.20. It found this was a relatively long-term marriage, and that Loren Woodward's drinking and extramarital relationship contributed to the breakup of the marriage. The district court also found that moving to advance Loren Woodward's job had not significantly diminished Rita Woodward's job prospects, but that her earning potential was not much higher than she was currently making. The court found that Loren Woodward's standard of living had remained stable after the couple separated, but that Rita Woodward's standard of living had markedly declined. The district court noted that Rita Woodward currently does not have health insurance, which she needs, and that she no longer has access to the types of recreation they had while the couple was married. The court ruled that "spousal support is appropriate and necessary to ensure that Ms. Woodward isn't unfairly impacted by the

reduction of her standard of living while Mr. Woodward's standard of living remains as it was or better than it was during the marriage." The district court ordered Loren Woodward to pay $1,000.00 per month in spousal support to Rita Woodward.

## II.

[¶ 4] A court may award spousal support under N.D.C.C. § 14–05–24.1. When deciding whether spousal support is appropriate, a court must consider the *Ruff–Fischer* guidelines, including:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Duff v. Kearns–Duff*, 2010 ND 247, ¶ 14, 792 N.W.2d 916. *See Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952). "The court must also consider the needs of the spouse seeking support and the ability of the other spouse to pay." *Becker v. Becker*, 2011 ND 107, ¶ 28, 799 N.W.2d 53. The court does not need to make a finding on every factor, but must explain the rationale for its decision. *Id.*

[¶ 5] A district court's finding of spousal support is a finding of fact subject to review under the clearly erroneous standard. *Becker*, 2011 ND 107, ¶ 6, 799 N.W.2d 53. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, no evidence exists to support the finding, or this Court is con-

vinced, based on the entire record, a mistake has been made." *Id.*

[¶ 6] In this case, the district court awarded Rita Woodward $1,000.00 per month in permanent spousal support. "Permanent spousal support is appropriate 'when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development lost during the course of the marriage.'" *Id.* at ¶ 30 (quoting *Duff*, 2010 ND 247, ¶ 15, 792 N.W.2d 916). However, "'[e]ven when a spouse is capable of rehabilitation, permanent spousal support may be an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living.'" *Becker* at ¶ 30 (quoting *Duff* at ¶ 15).

[¶ 7] Loren Woodward primarily argues that Rita Woodward lost no opportunities as a result of the marriage and can be rehabilitated after the divorce, and therefore rehabilitative spousal support rather than permanent spousal support is more appropriate. The district court found that, due to her education and job skills, Rita Woodward could be rehabilitated. The district court also found that Rita Woodward's standard of living would be drastically reduced without spousal support. The district court found that since the couple separated, Loren Woodward's standard of living had essentially stayed the same, while Rita Woodward's had been drastically reduced. The court awarded spousal support "to ensure that Ms. Woodward isn't unfairly impacted by the reduction of her standard of living while Mr. Woodward's standard of living remains as it was or better than it was during the marriage."

[¶ 8] Loren Woodward does not challenge the finding that Rita Woodward's standard of living has decreased. Rather, as noted, he argues that Rita Woodward is capable of being rehabilitat-

ed, and therefore permanent spousal support is inappropriate. "Although a difference in earning power may be considered in determining spousal support, 'we have not endorsed the equalization of income between divorcing spouses as a measure of spousal support,' especially if a disadvantaged spouse may be adequately rehabilitated." *Duff,* 2010 ND 247, ¶ 15, 792 N.W.2d 916 (quoting *Sommers v. Sommers,* 2003 ND 77, ¶ 17, 660 N.W.2d 586). But we have also held that even when a spouse can be rehabilitated, spousal support may be appropriate to ensure that one party does not bear the brunt of the overall reduction in standard of living. *See Becker,* 2011 ND 107, ¶ 30, 799 N.W.2d 53. The goal of spousal support in North Dakota is not minimal self-sufficiency, but "adequate self-support after considering the standard of living established during the marriage, the duration of the marriage, the parties' earning capacities, the value of the property and other *Ruff–Fischer* factors." *Moilan v. Moilan,* 1999 ND 103, ¶ 15, 598 N.W.2d 81. The district court did not err by ordering Loren Woodward to pay permanent spousal support to Rita Woodward.

### III.

[¶ 9] Loren Woodward also argues permanent spousal support should terminate upon cohabitation of the recipient. In *Cermak v. Cermak,* we held that spousal support should not automatically terminate upon cohabitation because "[t]hough unmarried cohabitants may voluntarily contribute to each other's support, they have no legal obligation to pay." 1997 ND 187, ¶ 10, 569 N.W.2d 280 (emphasis omitted). We re-affirm our holding in *Cermak.*

### IV.

[¶ 10] The district court's finding of spousal support is not clearly erroneous.

The record supports the district court's finding that Rita Woodward would be unfairly impacted by her reduced standard of living. The district court properly considered the *Ruff–Fischer* guidelines, and explained its reasoning. We affirm the judgment.

[¶ 11] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, JJ., and GARY H. LEE, D.J., concur.

[¶ 12] The Honorable GARY H. LEE, D.J., sitting in place of SANDSTROM, J., disqualified.