# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 57

Jean Kaspari,                                      Plaintiff and Appellee

    v.

Thomas Kaspari,                                 Defendant and Appellant

## No. 20210192

Appeal from the District Court of Mercer County, South Central Judicial District, the Honorable Pamela A. Nesvig, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Justice, in which Chief Justice Jensen and Justice Tufte joined, and Justice Crothers concurred in the result. Justice McEvers filed a dissenting opinion.

Ann C. Mahoney, Center, ND, for plaintiff and appellee.

Jennifer M. Gooss, Beulah, ND, for defendant and appellant.

**VandeWalle, Justice.**

[¶1]   Thomas Kaspari appealed from an amended judgment awarding spousal support to Jean Kaspari entered after the first appeal in this case. *See Kaspari v. Kaspari*, 2021 ND 63, 958 N.W.2d 139. The district court ordered Thomas Kaspari to pay $7,000 per month in spousal support to Jean Kaspari until he turns 65 years old. Thomas Kaspari argues the district court erred in the amount of spousal support it awarded. We reverse and remand.

I

[¶2]   Jean and Thomas Kaspari married in 1983. The parties separated in 2013. In 2019, Jean Kaspari filed for divorce. The district court ordered Thomas Kaspari to pay interim spousal support of $2,000 per month to Jean Kaspari. The parties stipulated to a property division. A trial was held on the issues of an equalization payment, spousal support, and attorney's fees. The court granted a divorce, adopted the parties' stipulated property division, and ordered Thomas Kaspari to pay Jean Kaspari $7,000 per month in spousal support until her death or remarriage. Judgment was entered.

[¶3]   Thomas Kaspari appealed. We held the district court erred when it ordered spousal support for an unlimited period of time. *Kaspari*, 2021 ND 63, ¶ 7. We vacated the spousal support award and remanded the case for the district court to reconsider the issue of spousal support. *Id.* at ¶ 8. We did not consider Thomas Kaspari's arguments about the amount of the spousal support ordered. *Id.*

[¶4]   After a hearing on remand, the district court ordered Thomas Kaspari to pay spousal support of $7,000 per month until he is 65 years old. An amended judgment was entered.

II

[¶5]   Thomas Kaspari argues the district court erred in the amount of spousal support it awarded. He claims the court failed to properly consider the

distribution of the parties' assets and debts, the evidence does not support a finding of a need for support, and the court improperly attempted to equalize the parties' incomes.

[¶6] A district court's decision on spousal support is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Schmuck v. Schmuck*, 2016 ND 87, ¶ 6, 882 N.W.2d 918. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶7] The district court may award spousal support under N.D.C.C. § 14-05-24.1(1). In deciding whether to award spousal support, the court must consider the *Ruff-Fischer* factors, including:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Woodward v. Woodward*, 2013 ND 58, ¶ 4, 830 N.W.2d 82 (quoting *Duff v. Kearns-Duff*, 2010 ND 247, ¶ 14, 792 N.W.2d 916). The district court is not required to make detailed findings about each *Ruff-Fischer* factor, but the court must explain the rationale for its decision. *Woodward*, at ¶ 4.

[¶8] In addition to the *Ruff-Fischer* factors, the district court must also consider the needs of the spouse seeking support and the other spouse's ability to pay. *Willprecht v. Willprecht*, 2021 ND 17, ¶ 11, 954 N.W.2d 707. The district court is "not required to complete a calculation to ensure each party's assets, debts, and expenses are accounted for in determining spousal support; however, a clear description of the financial situation of each party is helpful for this Court in understanding the district court's rationale in awarding spousal support." *Id.* (quoting *Berg v. Berg*, 2018 ND 79, ¶ 11, 908 N.W.2d 705).

2

The goal of spousal support "is not minimal self-sufficiency, but 'adequate self-support after considering the standard of living established during the marriage, the duration of the marriage, the parties' earning capacities, the value of the property and other *Ruff-Fischer* factors.'" *Woodward*, 2013 ND 58, ¶ 8 (quoting *Moilan v. Moilan*, 1999 ND 103, ¶ 15, 598 N.W.2d 81).

[¶9] On remand, the district court modified the duration of the spousal support and incorporated its prior findings, but it did not modify the amount of the spousal support. The court made findings about the *Ruff-Fischer* factors, including the parties were married in 1983 and Jean Kaspari was 58 years old and Thomas Kaspari was 59 years old at the time of the divorce. The court found Thomas Kaspari attended medical school during the marriage, Jean Kaspari worked until 1996 when the parties agreed she should stop working to raise their children, and Jean Kaspari returned to work shortly before the parties separated. The court found the parties accumulated significant debt during the marriage related to Thomas Kaspari's return to school to receive his medical degree and the parties were making their way out of debt.

[¶10] The district court considered Jean Kaspari's need for support and Thomas Kaspari's ability to pay. The court found Jean Kaspari has an associate's degree in nursing, she makes $57,000 per year, and it would not be financially beneficial for her to go back to school due to her limited number of work years based on her age. The court also found Jean Kaspari no longer lives in a residence she owns, she testified she is unable to purchase a home, she owns one vehicle, she is unable to pay her reasonable monthly expenses without acquiring credit card debt, she is unable to provide financial support for the parties' adult children, and she testified she is unable to do the things she enjoyed during the marriage on her salary. The court found Thomas Kaspari's income has consistently increased since the parties separated, he testified he has been working 70-80 hours each week since the separation, and he earns over $400,000 per year. The court also found Thomas Kaspari was awarded the marital home and the mortgage on the property, he has the ability to spend approximately $140,000 in a year on credit card purchases outside of his necessities, he has the ability to provide money to the parties' adult children and pay for vacations with the children, and he has spent large

amounts of money on various items, including international travel, tractors, and a plane.

[¶11] The district court ordered Thomas Kaspari to pay $7,000 a month in spousal support, explaining:

> The difference between the parties' earning ability is significant. [Jean Kaspari] earns $57,000 each year and [Thomas Kaspari] earns over $400,000 each year working as a physician. . . . The Court does note [Thomas Kaspari] is not likely to continue to earn his current income into the next thirty years as requested by [Jean Kaspari]. Income disparity will persist through their careers, therefore, the Court will order the duration of spousal support in this case to cease when [Thomas Kaspari] reaches the age of 65 years old, a standard and widely accepted retirement age. The Court finds this is an appropriate remedy to equalize the burdens of the divorce.
> [Jean Kaspari] is entitled to permanent spousal support in the amount of $7,000 each month until [Thomas Kaspari] reaches the age of sixty-five (65) years. [Thomas Kaspari] currently has the ability to pay this amount to [Jean Kaspari] with an annual income of approximately $400,000.

[¶12] However, the amount of spousal support awarded is disproportionate to the evidence of Jean Kaspari's need for support. Evidence established Jean Kaspari's income is approximately $57,000 per year. She claimed she has approximately $65,000 in annual spending, she estimated a mortgage on the residence she would like to purchase would be $1,227 per month, the mortgage payment would be less than what she was paying in rent, and she needed funds for a down payment on the home. She also claimed there are other things she would like to do, including travel and help the parties' adult children financially. Jean Kaspari's estimated yearly expenses result in an annual budget shortfall of approximately $8,000. The evidence of Jean Kaspari's need for spousal support is inconsistent with the amount of support awarded.

[¶13] The district court's findings focus on the disparity in the parties' incomes, explaining Jean Kaspari earns $57,000 each year and Thomas Kaspari earns over $400,000 each year. The court also found Thomas Kaspari has spent large

4

amounts of money on various items since the parties separated, Jean Kaspari has been unable to purchase a home or do the things she enjoyed during the marriage on her salary, and the income disparity will persist through their careers. The difference in the parties' earning power may be considered in determining spousal support, but we have not endorsed equalizing the parties' incomes as a measure of spousal support. *Woodward*, 2013 ND 58, ¶ 8. The court's award, without further explanation, gives the appearance that the court was attempting to equalize the parties' incomes.

[¶14] Although the district court made findings about the *Ruff-Fischer* factors and considered Jean Kaspari's need for spousal support and Thomas Kaspari's ability to pay support, the court failed to adequately explain its reason for awarding spousal support of $7,000 per month when Jean Kaspari did not show a need for that amount. The court was not required to provide a detailed calculation of Jean Kaspari's need for spousal support, but it was required to make sufficient findings to provide a discernible basis for its decision. *See Willprecht*, 2021 ND 17, ¶ 12. Without further explanation from the district court, the amount appears to be arbitrary or an attempt to equalize the parties' incomes. We reverse the court's spousal support decision and remand for the court to make further findings explaining its decision or to reconsider the amount of support.

III

[¶15] We reverse the amended judgment and remand.

[¶16] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Jerod E. Tufte

I concur in the result.
Daniel J. Crothers

**McEvers, Justice, dissenting.**

[¶17] I respectfully dissent. In my opinion, the district court's award of spousal support is supported by the evidence and not clearly erroneous. I believe the majority opinion has not considered all the evidence on need when concluding Jean Kaspari's need is disproportionate and inconsistent with the amount of spousal support awarded. Majority, at ¶ 12. In doing so, rather than reviewing Jean Kaspari's need based in part on the standard of living the parties enjoyed during marriage, the majority has reversed the district court's finding and replaced it with a standard of need based on minimal self-sufficiency. This is a distinction we have repeatedly instructed district courts to consider, and it is specifically pointed out by the majority. Majority, at ¶ 8.

[¶18] The majority notes that at the time of trial Jean Kaspari's annual expenditures were roughly $65,000. Majority, at ¶ 12. Based on her expenditures and her income, the majority calculates Jean Kaspari has a budget shortfall of approximately $8,000. *Id.* This shortfall, the majority concludes, is inconsistent with a spousal support award of $7,000 a month. However, at trial, Jean Kaspari testified her current expenditures were not indicative of her need:

> I am living paycheck to paycheck. And I'm just—I just have no means of really—I don't know. I can only describe it as living paycheck to paycheck. That's—I have no security.

Jean Kaspari also testified that she lived in a rented townhome with the parties' adult son, from whom she did not collect rent. She testified she could not afford to buy a home at the time of trial.

[¶19] One of the purposes of spousal support is "to ensure that one party does not bear the brunt of the overall reduction in standard of living" caused by the divorce. *Woodward v. Woodward*, 2013 ND 58, ¶ 8, 830 N.W.2d 82. Minimal self-sufficiency is not the goal of spousal support. *Id.* The goal is "adequate self-support" based on, among other factors, the standard of living established during the marriage and the duration of the marriage. *Id.* When the parties cannot maintain the same standard of living apart as they could together, the

need to balance the burdens caused by the divorce is a valid consideration. *Shields v. Shields*, 2003 ND 16, ¶ 8, 656 N.W.2d 712.

[¶20] Jean Kaspari's expenditures at the time of trial do not necessarily equate to her need for purposes of spousal support. Evidence was presented that during the parties' marriage they lived in a farmhouse, owned horses, cattle, and various farm machinery. Evidence also established the parties ate at restaurants, took various trips, including annual ski trips, and at least one trip abroad. Jean Kaspari's Rule 8.2 financial statement lists expenses amounting to approximately $94,000. At trial, she testified the figures in her financial statement were indicative of the expenses required for her to have a standard of living comparable to the parties' life during the marriage. The majority's calculation of Jean Kaspari's budget shortfall does not consider this evidence. Rather, the majority's calculation is based on an amount Jean Kaspari expressly testified was insufficient.

[¶21] Given the evidence that was presented, I believe the district court's award of spousal support is not clearly erroneous. I acknowledge Jean Kaspari could possibly have overestimated her need and portrayed the parties' standard of living during their marriage more positively than actually occurred. However, I would defer to the court's credibility assessment. Unlike the majority, I understand clearly the rationale behind the court's decision. As the court stated, "parties should share in a decrease in a standard of living" caused by a divorce. The court's award attempts to apportion the burdens of the divorce between the parties. The court explained:

> Jean no longer lives in an owned residence, is unable to pay for her reasonable monthly expenses without acquiring credit card debt, owns one vehicle, and is unable to provide financial support to their adult children. Thomas remains at the parties' homestead which he owns, subject to a mortgage. Thomas has the ability to spend approximately $140,000 in a year on credit card purchases outside of his necessities. He has the ability [to] provide money to the children and pay for vacations with the children. Thomas can purchase tractors, trucks and an airplane. Permanent support is appropriate when there is a substantial income disparity between the parties that cannot be adjusted by property division or

7

rehabilitative spousal support, and the parties should share in a decrease in a standard of living.

It should be noted the parties stipulated to the property division, leaving spousal support as the only means by which the court could balance the burdens of divorce and to give Jean Kaspari the ability to maintain her pre-divorce standard of living.

[¶22] The district court's rationale is consistent with the law we recently set out in *O'Keeffe v. O'Keeffe*, 2020 ND 201, ¶ 12, 948 N.W.2d 848, where we stated:

> [A] "substantial disparity between the [spouses'] incomes that cannot be readily adjusted by property division or rehabilitative support" may support an award of "indefinite permanent support to maintain the disadvantaged spouse." *Krueger v. Krueger*, 2008 ND 90, ¶ 9, 748 N.W.2d 671; *see also Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 9, 693 N.W.2d 1. Such "permanent" spousal support "may be appropriate when there is a substantial income disparity and a substantial disparity in earning power that cannot be adjusted by property division or rehabilitative support." *Innis-Smith v. Smith*, 2018 ND 34, ¶ 22, 905 N.W.2d 914 (citing *Stephenson v. Stephenson*, 2011 ND 57, ¶ 27, 795 N.W.2d 357); *Friesner v. Friesner*, 2019 ND 30, ¶ 14, 921 N.W.2d 898.

While the legislature has now required permanent spousal support to be of limited duration, the district court correctly applied the law after remand. *See* N.D.C.C. § 14-05-24.1(1).

[¶23] The standard we discussed in *O'Keeffe* has applied for many years. For example, in *Fox v. Fox,* 2001 ND 88, ¶ 24, 626 N.W.2d 660, we affirmed a similar award of spousal support under comparable circumstances. In that case, the parties divorced after 32 years of marriage. *Fox v. Fox*, 1999 ND 68, ¶ 2, 592 N.W.2d 541. The husband, who was 60 years old at the time of trial, was a retired physician with disability income amounting to $206,400. *Id.* The wife did not work outside the home for the duration of that marriage. *Id.* The district court ordered the husband to pay $6,000 a month in spousal support until he turned 65. *Fox*, 2001 ND 88, ¶ 23. This Court affirmed explaining:

8

> Permanent support is the price to be paid for the earlier mutual decision about the role to be played by each marital partner when, in fact, the economically disadvantaged partner cannot obtain, after training and reasonable time, the income necessary to live a life comparable to the one prior to divorce or comparable to the higher earner's post-divorce reduced standard of living.

*Id.* at ¶ 24 (quoting *Wiege v. Wiege*, 518 N.W.2d 708, 712 (N.D. 1994) (Levine, J., concurring)).

[¶24] Although each divorce case must be decided on its own unique facts, it is worth noting that the Kaspari's marriage is similar in length to the marriage in *Fox*. The duration of support is also similar. Thomas Kaspari's income is double the husband's income in *Fox*. Yet the amounts awarded—$6,000 in *Fox* and $7,000 here—are similar. This does not account for the fact that the $6,000 award in *Fox* was based on the value of a dollar more than twenty years ago—an amount this Court affirmed on appeal.

[¶25] Despite the logic expressed by the district court in its order, the majority opines the award in this case appears to be an arbitrary attempt to equalize the parties' income. I disagree. The award results in Thomas Kaspari paying Jean Kaspari $84,000 per year. Before taxes, his income, less the amount ordered, equals $316,000. Jean Kaspari's income, before taxes, with that amount included, equals $141,000. There is a difference in favor of Thomas Kaspari amounting to $175,000. Based on these amounts, I do not see how this could be arbitrary income equalization.

[¶26] For these reasons, I would hold the district court's decision is not clearly erroneous and affirm the judgment.

[¶27] Lisa Fair McEvers

9